**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:25-cv-561-KDB**

| | | |
|---|---|---|
| LUKE ANDREW HEMOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| DONALD BROWN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendant Donald Brown's Motion to Dismiss [Doc. 16].

## I.      BACKGROUND

The Plaintiff, proceeding pro se, filed this civil rights action against Defendants including Catawba County Sheriff Donald Brown, addressing incidents that allegedly occurred while he was a pretrial detainee. [Doc. 1: Complaint; see Doc. 1-2: Proposed Summonses]. The Complaint passed initial review on the Plaintiff's § 1983 claims against Defendant Brown in his official capacity, and for violations of the Rehabilitation Act and the Americans with Disabilities Act. [Doc. 2: Order on Initial Review].

On October 10, 2025, the summons directed to Defendant Brown was returned as executed, with the summons return indicating that a deputy U.S. Marshal personally served shift supervisor Cpl. Ewing at the Catawba County Sheriff's Office ("CCSO") on August 18, 2025, and "Sheriff Brown confirmed service over phone" that same day. [Doc. 12 at 1, 3].

On October 22, 2025, Defendant Brown filed a Motion to Dismiss seeking dismissal with

prejudice as to all of the Plaintiff's claims asserted against him pursuant to Fed. R. Civ. P. 12(b)(1), (2), (4), (5), and (6) for lack of exhaustion, lack of personal jurisdiction, improper service, and failure to state a claim upon which relief can be granted. [Doc. 17: MTD]. The Court notified the Plaintiff of the opportunity to respond to Defendant Brown's Motion. [Doc. 18: <u>Roseboro</u> Order]. The Plaintiff responded [Doc. 26: MTD Response] and Defendant Brown replied [Doc. 27: MTD Reply]. This matter is now ripe.

## II.    STANDARDS OF REVIEW[1]

### A. Rules 12(b)(4) and (b)(5)

Prior to the exercise of personal jurisdiction over a defendant in federal court, the plaintiff must satisfy the procedural requirement of service of summons. <u>Omni Capital Int'l, Ltd. V. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987). A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, while a motion to dismiss made under 12(b)(5) attacks a complaint for insufficient service of process. <u>See</u> Fed. R. Civ. P. 12(b)(4), (b)(5). "The plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." <u>Elkins v. Broome</u>, 213 F.R.D. 273, 275 (M.D.N.C. 2003) (citing <u>Plant Genetic Sys., Inc. v. Ciba Seeds</u>, 933 F. Supp. 519, 526 (M.D.N.C. 1996)).

Federal Rule of Civil Procedure 12(b)(5) authorizes dismissal of a case for insufficient service of process. A plaintiff defending against a Rule 12(b)(5) motion bears the burden to demonstrate that service was adequate. *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)); *see Danik v. Hous. Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010). If a court determines that service of

---

[1] The Court will focus this Order on Rules 12(b)(4), (b)(5), and (b)(6) and need not reach the other grounds asserted by Defendants.

process is insufficient, the Court has broad discretion to determine whether dismissal under Rule 12(b)(5) is warranted. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992); *S100, Inc. v. Odili, No. CV TDC-22-0411, 2022 WL 5247569, at \*2 (D. Md. Oct. 6, 2022)*.Dismissal is generally inappropriate "when there exists a reasonable prospect that service may yet be obtained." *Id.* Although the "plain requirements for the means of effecting service of process may not be ignored," a "technical violation of the rule" or "failure of strict compliance may not invalidate the service of process" when a defendant has received actual notice of a case. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Further, when service is accomplished in a manner consented to by the defendant, service of process is valid and a court has jurisdiction over the defendant. *Ockers Co. v. Clear Touch Interactive, Inc.*, No. CV 6:21-00776-HMH, 2021 WL 1827181, at \*3 (D.S.C. May 7, 2021). Allowing for the waiver of service is consistent with the principle that a defendant can waive personal jurisdiction. *See* Federal Rule of Civil Procedure 4(d).

### B. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id.

In reviewing a complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."

Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012); see also Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Iqbal, 556 U.S. at 679, which requires the Court to assess whether the factual allegations of the Complaint are sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has explained:

> To satisfy this standard a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

A court may consider documents attached to a motion to dismiss pursuant to Rule 12(b)(6) if those documents are integral to the complaint and are authentic. See E.I. du Pont de Nemours & Co., 637 F.3d at 448.

## III.    FACTUAL BACKGROUND

Viewing the well-pleaded allegations set forth in the Complaint as true, the following is a recitation of the relevant facts.

On March 20, 2024, the Plaintiff was arrested by a CCSO officer at his home for a probation violation. [Doc. 1 at 5]. While pushing the Plaintiff in his wheelchair, the officer made a sudden stop and the handcuffed Plaintiff fell forward out of the wheelchair, injuring his right shoulder. [Id.]. The Plaintiff was transported to the hospital in an ambulance. [Id.]. He was given an arm sling which he was advised to wear for 72 hours, and he was discharged. The Plaintiff's arm sling was removed and he was transported to the CCDF in a non-handicap accessible vehicle.

[Id.; Doc. 1-3 at 1]. At the CCDF, he was given a wheelchair without footrests and he was placed in a cell. [Doc. 1-3 at 1]. The next day, he was transported to the Raleigh Central Prison in a non-handicap accessible vehicle. [Id.].

On April 16, 2024, the Plaintiff was transported from Central Prison to court in Catawba County in a non-handicap accessible vehicle. [Id.]. The judge granted Plaintiff's request for his personal wheelchair, which Plaintiff's brother had brought to court. Plaintiff was returned to Central Prison in a non-handicap vehicle and, upon arriving at Central Prison, Plaintiff's personal wheelchair was confiscated. [Id.]. The next day, the Plaintiff decided to write to his attorney and to the CCSO "to begin the grievance process." [Doc. 1-3 at 1].

On April 20, 2024, the Plaintiff wrote a letter to Sheriff Brown, stating that: he fell and was injured when the arresting officer stopped the wheelchair suddenly; his sling was confiscated; he was transported from the hospital to the CCDF in a non-handicap vehicle in violation of the ADA; and the Sheriff is obligated to ensure Plaintiff's safety and to mitigate the risk of injury when transporting him. [Doc. 1-14 (4/20/24 Letter)].

On July 10, 2024, the Plaintiff was transported back to CCDF in a non-handicap vehicle, and he was placed in a non-handicap cell. [Doc. 1-3 at 2]. All of the Plaintiff's property was brought with him except for a Lumex commode chair that had been specially ordered for him by a doctor at Central Prison. [Doc. 1-6 at 1-2]. The Plaintiff told a nurse on duty that he needed an eggcrate mattress because he was prone to pressure sores, however, she instead provided him with an extra regular mattress. [Id.]. The Plaintiff filed grievances about the eggcrate mattress and about the Lumex commode chair on July 13 and 16, 2024, respectively. [Id. at 1-2; see Doc. 16-1 at 11 (7/13/24 grievance); Doc. 16-1 at 13 (7/13/24 grievance)]. He explained that the Lumex chair, which is the brand he uses at home, has clamps to make transfers safer and more secure. [Doc. 1-

5

6 at 2]. He re-filed both requests after having received no response for several days. [Id.]. Both grievances were "resolved" by Plaintiff's transfer back to Central Prison (in a non-handicap vehicle) on July 17, 2024. [Doc. 16-1 at 11, 13; Doc. 16-1: Kelly Decl.[2] at ¶¶ 8-10]. The Plaintiff "had no opportunity to continue the appeal process" at Central Prison. [Doc. 26 at 2].

On May 4, 2025, the Plaintiff was transported back to CCDF in a non-handicap vehicle. [Doc. 1-6 at 2]. This time, his doctor-ordered commode chair was transported with him. He was placed in a non-handicap cell for a court appearance the next day. [Id.]. He was then transported to Gaston County.

The Plaintiff made several verbal requests for transport in a handicap-accessible van, but "they" said that such was not available. [Doc. 1 at 7; Doc. 1-3 at 1-2].

On June 21, 2025, the Plaintiff filed a "Notice of Intent" letter to Sheriff Brown, complaining that Catawba County violated the ADA's transportation section. [Doc. 1-13 at 3 (6/21/25 Notice of Intent)]. The Plaintiff did not receive a response. [Doc. 1-6 at 1].

## IV. DISCUSSION

### A. Service

Defendant Brown moves to dismiss Plaintiff's Complaint for insufficient service. In the Complaint, Plaintiff named Sheriff Donald Brown as a Defendant in his official capacity. A claim against Brown in his official capacity is essentially a suit against the office of the sheriff itself. See generally Kentucky v. Graham, 473 U.S. 159, 165 (1985) (suit against an officer in his official capacity generally represents another way of pleading an action against an entity of which an officer is an agent). Rule 4(j)(2) of the Federal Rules of Civil Procedure provides that a local government … "that is subject to suit"[3] may be served by "delivering a copy of the summons and

---

[2] Captain Kevin Kelly, the CCSO Jail Administrator, is not a defendant in this case.
[3] A county sheriff's department is not subject to suit, Lowery v. Forsyth Cnty. Sheriff's Dep't, No. 1:20-CV-888,

of the complaint to its chief executive officer," or by serving the summons and complaint "in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). An individual may be served under state law or (A) personal delivery, (B) service at the individual's dwelling with someone of suitable age and discretion who resides there or (C) delivery to an agent authorized by appointment or law to receive service of process. Fed. R. Civ. P. 4(e)(2). North Carolina law provides that where a party to be served is a sheriff, service of summons must be effected by the county coroner, or, if the county has no coroner, by the clerk of court or the clerk's designee. N.C. Gen. Stat. § 162-16; see also Webb v. Price, 708 S.E.2d 94, 95 (N.C. 2011); Goodwin v. Furr, 25 F. Supp. 2d 713, 718 (M.D.N.C. 1998).

While Plaintiff did not comply with N.C. Gen. Stat. § 162-16 and effect service under N.C. law, he has proffered enough evidence of properly effected service under federal law to survive Defendants' initial jurisdictional challenge. See Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016) ("[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge."); Sigmon v. Brown, No. 5:20-CV-00179, 2021 WL 2295589, at *3 (W.D.N.C. June 4, 2021) (holding that even though Defendants were correct that § 162-16 is the exclusive means under North Carolina law to effectuate personal service upon a sheriff and his deputies," service may still properly be made under the federal rules). Here, whether the Court views the confirmation of Sheriff Brown with respect to service as an

2022 WL 939651, at *7 (M.D.N.C. Mar. 29, 2022) ("[T]he 'Sheriff's Office' is not a legal entity subject to suit under the law of North Carolina."). "Rather, the sheriff is a constitutional officer independent of county government." Id.

acknowledgement of the appointment of the shift supervisor Cpl. Ewing as his agent for service, see Boyd v. Robeson Cnty., 169 N.C. App. 460, 477, 621 S.E.2d 1, 11 (2005) (in North Carolina, "the control of the employees hired by the sheriff is vested exclusively in the sheriff" ), or simply acceptance of personal service, the Court finds sufficient service was made pursuant to Rule 4(e)(2), even if the Court does not independently find the Sheriff's acknowledgment of service to be a waiver of any further challenge to service. *See Ockers*, 2021 WL 1827181 at *3 (if a defendant consents to the manner of service, service of process is valid). The Court will accordingly deny Defendant Brown's Motion to Dismiss for ineffective service and proceed to the merits of Defendants' other arguments.

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action concerning prison conditions pursuant to § 1983 or any other federal law. 42 U.S.C. § 1997e(a); see Fauconier v. Clarke, 966 F.3d 265 (4th Cir. 2020) (PLRA applies to the ADA). The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is mandatory, and courts lack the authority to waive that requirement. Id. at 524; Jones v. Bock, 549 U.S. 199, 211 (2007). However, PLRA exhaustion is not jurisdictional. Mays v. Smith, 70 F.4th 198, n.2 (4th Cir. 2023).

A prisoner need only exhaust those remedies actually available to him. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). A grievance process is "unavailable:"

(1) where the remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative scheme is "so opaque" that it is "practically ... incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 643-44). The burden is on the plaintiff to show that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance). "[N]o combination of 'special circumstances' can excuse a prisoner's failure to exhaust." Hardin, 2023 WL 3969989, at *2 (quoting Ross, 578 U.S. at 639). Exhaustion of administrative remedies is mandatory even where the inmate claims that exhaustion would be futile. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).

The CCDF's Inmate Grievance System provides that "[a]ny inmate confined to the facility" may file a grievance on the facility's kiosk, or may turn in an inmate grievance form to a detention officer or shift supervisor if the kiosk is unavailable. [Doc. 16-1 at 5 (CCDF Inmate Grievance System)]. The shift supervisor then provides the inmate with a written response within 5 working days, and the inmate may appeal on the kiosk or by completing a form within five days. The Detention Facility administrator or designee responds to the appeal within 10 working days.

Defendant Brown contends that the Plaintiff failed to exhaust his administrative remedies regarding the claims that: he was transported in a regular police vehicle rather than in a wheelchair-accessible van; he was not provided with an eggcrate mattress or a Lumex commode seat; and the CCDF medical unit cells where he was housed were not handicap/wheelchair accessible.

As a preliminary matter, the Defendant's reliance on Rule 12(b)(1) is unavailing because the PLRA's exhaustion requirement is not jurisdictional. Mays, 70 F.4th at 198, n.2. The Court

9

will instead consider exhaustion pursuant to Rule 12(b)(6). See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may … consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic.").

In his Complaint, the Plaintiff does not claim to have submitted any grievances about the CCDF cells or transport conditions. The Defendant has demonstrated that the Plaintiff failed to exhaust these claims by filing grievances addressing these matters, and the Plaintiff has not attempted to demonstrate that he exhausted these claims or that the administrative remedy procedure was unavailable to him. The Plaintiff contends only that he addressed these matters in verbal complaints and in letters, however, such is insufficient to demonstrate proper exhaustion. See Ngo, 548 U.S. at 90 (the PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)'"); [see, e.g., Doc. 16-1 at 5]. Defendant Brown's Motion to Dismiss will, therefore, be granted for lack of exhaustion as to the Plaintiff's claims regarding CCDF cells and transport conditions. The dismissal of those claims will be without prejudice. See Moss v. Harwood, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (dismissals for failure to exhaust should be without prejudice).

With regard to the Plaintiff's claims that he was denied a Lumex commode chair and an eggcrate mattress, the parties agree that the Plaintiff submitted grievances addressing these issues on July 13 and 17, respectively, and that the grievances were "resolved" on July 17, 2024 when the Plaintiff was transported to Central Prison. The Plaintiff asserts that he was unable to complete the appeal process of those grievances due to his transfer. The Defendant contends that the Plaintiff should have appealed despite the transfer. However, the grievance procedure itself provides that it is available to "[a]ny inmate *confined at the facility*…," and there does not appear to be a

mechanism for the Plaintiff to have continued the grievance procedure after he left the CCDF. [Doc. 16-1 at 6] (emphasis added). The Court finds that the Plaintiff has sufficiently demonstrated that the grievance procedure was unavailable to him with regards to Lumex commode chair and the eggcrate mattress. Accordingly, the Defendant's Motion to Dismiss for lack of exhaustion is denied as to the commode chair and eggcrate mattress claims, and the Court will determine whether the Plaintiff has stated a claim upon which relief can be granted for those issues under the ADA/RA and § 1983 in the sections that follow.

### C. ADA and RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[4] A "public entity" includes state prisons and county jails. See United States v. Georgia, 546 U.S. 151 (2006) (citing 42 U.S.C. § 12131(1); Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998)); see Hodge v. Randolph County Jail, 2023 WL 12090473, at *2 (M.D.N.C. Dec. 6, 2023), *report and rec. adopted*, 2024 WL 5704243 (M.D.N.C. Jan. 19, 2024).

To demonstrate a violation of the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program or activity and (3) he was denied those benefits, or otherwise discriminated against, based on his disability. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). A public entity must make reasonable modifications when the entity has knowledge of a person's disability-related limitations. Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d 333,

---

[4] ADA and RA claims can be "combined for analytical purposes because the analysis is substantially the same" for both. Koon v. North Carolina, 50 F.4th 398, 403 n.2 (4th Cir. 2022) (quoting Seremeth v. Bd. Of Cnty. Comm'rs, 673 F.3d 333, 336 n.1 (4th Cir. 2001)).

336 (4th Cir. 2012) ("Discrimination includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." (citation and quotation marks omitted)). "A modification is reasonable if it is 'reasonable on its face' or used 'ordinarily in the run of cases' and will not cause 'undue hardship.'" Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 507 (4th Cir. 2016) (citations omitted). An accommodation is not reasonable when it "either imposes undue financial and administrative burdens ... or requires a fundamental alteration in the nature of the program." Halpern, 669 F.3d at 464 (quoting Sch. Bd. of Nassau Cnty. v. Arline, 480 U.S. 273, 287 n.17 (1987)).

Defendant Brown concedes that the Plaintiff is a person with a disability. [See Doc. 17 at 14]. The Plaintiff's only exhausted claims are that the Plaintiff requested, and was not provided, a Lumex commode chair and an eggcrate mattress during his one-week stay at CCDF beginning on July 10, 2024. [Doc. 1-6 at 1-2]. He was, however, provided with another brand of commode chair and with an extra conventional mattress. [Id.]. The Plaintiff fails to allege facts suggesting that the failure to provide him with his desired brand of commode chair or with an eggcrate mattress was based on his disability, or that these alternate accommodations were inadequate, especially in light of the fact that the Plaintiff was transferred out of CCDF just seven days later. He returned to CCDF on only one additional night in May, 2025, at which time he brought his own commode chair with him; it is unclear whether he requested or received an eggcrate mattress on that occasion. [Doc. 1-6 at 2].

The Plaintiff's mere disagreement with the accommodations he was provided during this brief seven-day period is insufficient to state an ADA or RA claim. See Miller v. Hinton, 288 F.App'x 901, 902-03 (4th Cir. 2008) (ruling that prison's alleged denial to prisoner of access to colostomy bags and catheters did not violate the ADA absent a showing that inmate was treated in

12

that manner because of his disability); <u>Carter as next of friend of Carter v. City of Shreveport</u>, 144 F.4th 809 (5th Cir. 2025) (paralyzed plaintiff whose bedsores were inadequately tended during a week-long stay in jail, and became infected, did not have an ADA claim for failure to accommodate where the jail delayed releasing him for five days after determining that they could not provide adequate care for his bedsores; this was a state law negligence claim). Defendant Brown's Motion to Dismiss will be granted for failure to state a claim upon which relief can be granted and the ADA/RA claims against him regarding the commode chair and eggcrate mattress will be dismissed with prejudice. <u>See</u> <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 399 n. 3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'")

### D. § 1983 Claims

Finally, the Plaintiff asserts a Fourteenth Amendment claim against Sheriff Brown in his official capacity.

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Graham</u>, 473 U.S. at 165 (quoting <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 n. 55 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120-21 (quoting <u>Monell</u>, 436 U.S. at 691). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." <u>Moore v. City of Creedmoor</u>, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Id.</u> (quoting <u>Monell</u>, 436 U.S. 658, 694).

To establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171. As such, the doctrine of *respondeat superior* does not apply in actions brought under § 1983. See Monell, 436 U.S. at 694. While personal involvement is required, it need not be "hands-on." Riddick v. Barber, 109 F.4th 649 (4th Cir. 2024). "Instead, the 'requisite causal connection' between defendant and violation can be established if the defendant 'set[s] in motion a series of acts by others which the actor[ ] know[s] or reasonably should know would cause others to inflict the constitutional injury.'" Id. at 649-50 (citing Amisi v. Brooks, 93 F.4th 659, 670 (4th Cir. 2024) (internal quotation marks omitted) (establishing liability for a person who "subjects, or causes to be subjected," another person to a deprivation of constitutional rights)).

"[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated." Tate v. Parks, 791 F. App'x 387, 390 (4th Cir. 2019) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment." Id. (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)). "To prevail on such a claim, a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." Id. (citing Williamson, 912 F.3d at 178).

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. Short v. Hartman, 87 F.4th 593, 611 (4th

Cir. 2023). To state such a claim, a plaintiff must allege that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. at 611. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). It remains, however, insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611-12.

As discussed *supra*, the only exhausted issues pertaining to CCDF are Plaintiff's July 10, 2024 requests for a Lumex commode chair and for an eggcrate mattress. The Plaintiff has not plausibly alleged that Sheriff Brown had any involvement whatsoever in the commode chair or eggcrate mattress issue personally, as a supervisor, or as a matter of custom or policy. Moreover, the Plaintiff has not plausibly alleged that any CCDF employee violated his constitutional rights regarding the mattress or chair. He alleges only that he requested a specific commode chair and eggcrate mattress on July 10, 2024, that he was provided alternate products with which he was dissatisfied, and that he was transferred to another institution that was able to provide him with better care just seven days later. These allegations do not plausibly demonstrate the existence of any unconstitutional policy or custom, an express intent to punish or lack of legitimate nonpunitive objective, or deliberate indifference to a serious medical need. See generally City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (supervisors and municipalities cannot be liable under § 1983

15

without some predicate "constitutional injury at the hands of the individual [state] officer," at least in suits for damages); see, e.g., Simmons v. Corizon Health, Inc., 136 F.Supp.3d 719 (M.D.N.C. Oct. 6, 2015) (granting motion to dismiss § 1983 claims against sheriff in his official capacity where the plaintiffs failed to plausibly allege that the injuries were caused by a sheriff's office policy or custom of deliberate indifference to medical needs of prisoners). The Plaintiff's dissatisfaction with the alternate commode chair and mattresses that he was provided do not rise to the level of a constitutional violation. See generally Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (reaffirming that disagreements between a prisoner and medical staff regarding what treatment is needed fall short of showing deliberate indifference); Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (if a prisoner is under the care of medical experts, a nonmedical prison official is generally justified in believing that the prisoner is in capable hands). Defendant Brown's Motion to Dismiss is, therefore, granted on Plaintiff's § 1983 claims regarding the Lumex commode chair and the eggcrate mattress, and they are dismissed with prejudice. See Moitie, 452 U.S. at 399, n.3.

## V.    CONCLUSION

For the foregoing reasons, Defendant Donald Brown's Motion to Dismiss is granted in part and denied in part. The Plaintiff's ADA, RA, and § 1983 claims against Defendant Brown regarding the Lumex commode chair and the eggcrate mattress are dismissed with prejudice for failure to state a claim upon which relief can be granted, and the remaining claims are dismissed without prejudice for lack of exhaustion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Donald Brown's Motion to Dismiss [Doc. 16] is **GRANTED IN PART AND DENIED IN PART**.

16

The Plaintiff's ADA, RA, and § 1983 claims against Defendant Brown regarding the Lumex commode chair and the eggcrate mattress are dismissed with prejudice, and the remaining claims as to him are dismissed without prejudice.

The Clerk is respectfully instructed to terminate this action as to Defendant Brown.

**IT IS SO ORDERED.**

Signed: March 2, 2026

Kenneth D. Bell
United States District Judge

17